Corey BAKER, et al., Appellants,

v.

BEST BUY STORES, LP, Respondent,

Chartis WarrantyGuard, Inc., Respondent.

No. A11–997.

Court of Appeals of Minnesota.

Feb. 21, 2012.

Anthony J. Nemo, Andrew L. Davick, Meshbesher & Spence, Ltd., Minneapolis, MN, and Anthony L. Brown, Maplewood, MN, for appellants.

Denise S. Rahne, Anne M. Lockner, Robins, Kaplan, Miller and Ciresi, Minneapolis, MN, for respondent Best Buy Stores, LP.

Joseph M. Windler, David M. Aafedt, Winthrop & Weinstine, Minneapolis, MN, for respondent Chartis WarrantyGuard, Inc.

Considered and decided by WORKE, Presiding Judge; CONNOLLY, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

This is an appeal from the dismissal of appellants' complaint for breach of contract and consumer fraud; appellants claimed that respondents breached the terms of their service contract by failing to honor the four years of coverage purchased by appellants under the contract. Appellants argue that the district court erred by dismissing the complaint under Minn. R. Civ. P. 12.02(e) because (1) the service agreement was ambiguous and (2) appellants' claims under the Minnesota Consumer Fraud Act (MCFA) and the Minnesota False Statements in Advertisements Act (MFSAA) were properly pleaded. There is no merit in these arguments and we affirm.

## FACTS

In December 2008, appellants Corey and Jamie Baker purchased a television set from respondent Best Buy, L.P. The purchase included a one-year warranty from the manufacturer. In addition to the manufacturer's warranty, appellants purchased a four-year service contract from Best Buy. The service contract became effective on the date of purchase, and provided that if the television failed during the duration of the contract, Best Buy would either repair or, at its discretion, replace the product or provide a voucher for the fair market value of the product.

In November 2010, appellants returned the television to Best Buy because of a defect in the product. By this time, the manufacturer's warranty had expired. Best Buy, on behalf of itself and respondent Chartis WarrantyGuard, Inc., determined that the television could not or should not be repaired, and the company replaced the television with a comparable model. Best Buy also told appellants that the service contract did not provide coverage for the replacement television, and that if appellants wanted a service contract for the replacement television, they would have to purchase a new service contract at full price. Appellants then purchased, at full price, a second four-year service contract for the replacement television.

In January 2011, appellants filed a complaint on behalf of themselves and a putative class against Best Buy and Chartis WarrantyGuard (collectively respondents) alleging claims of breach of contract, consumer fraud, and false statements in advertisement. These claims stemmed from appellants' allegations that respondents refused to honor the terms of the 2008 service contract purchased by appellants.

Respondents moved to dismiss on the basis that they complied with their obligations under the 2008 service contract and because there were no facts asserted in the complaint that would support any of appellants' claims. In its subsequent order dismissing appellants' complaint with prejudice, the district court concluded that appellants failed to state a claim for breach of contract because the service contract unambiguously expired upon replacement of the television. The court also concluded that appellants failed to state claims under the MCFA and the MFSAA.

## ISSUES

1. Did the district court err by concluding that appellants failed to state a claim

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

for breach of contract because the service contract unambiguously provided that the seller's obligation under the contract expired upon replacement of the product?

2. Did the district court err by determining that appellants failed to properly plead a cause of action under the MCFA and the MFSAA?

## ANALYSIS

An appellate court reviews de novo decisions on motions to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). The question before us is whether the complaint sets forth a legally sufficient claim for relief. *Id.* We consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the non-moving party. *Id.* In deciding a motion to dismiss, the court "may consider the entire written contract when the complaint refers to the contract and the contract is central to the claims alleged." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn.1995).

### 1.

The primary goal in contract interpretation "is to ascertain and enforce the intent of the parties." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). If the contract is memorialized in a written instrument, the reviewing court determines the parties' intent "from the plain language of the instrument itself." *Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267, 271 (Minn.2004). Contract language is given its plain and ordinary meaning, read in the context of the instrument as a whole. *Brookfield Trade Ctr. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn.1998). "A con-tract must be interpreted in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn.1995).

Appellants argue that the district court erred by dismissing their breach-of-contract claims because the service contract is ambiguous. Contract language is ambiguous if it is "reasonably susceptible to more than one interpretation." *Brookfield Trade Ctr.*, 584 N.W.2d at 394. "Whether a contract is ambiguous is a question of law that we review de novo." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn.2008). But if a contract is ambiguous, its interpretation is a question of fact for the jury. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn.2003).

Here, the service agreement states that it is "a legal contract," that the buyer has had an opportunity to read it, and that the buyer agrees to be bound by the terms. Coverage under the contract includes "parts and labor costs to repair [the television] in the event [the] product fails to properly operate." The contract adds that if the seller determined that the product cannot be repaired, the seller will replace the product with a comparable product.

Under the terms of the service contract purchased by appellants, coverage under the plan was effective from the date the product was purchased and would expire four years from the effective date. But the next paragraph of the service contract adds that "[o]ur obligations under this Plan will be fulfilled in their entirety if we replace your product." The contract further stated "Limits of Liability," defining a limit of the lesser of repair or replacements and finally stating that "[i]n the event ... we replace the product, we shall have satisfied all obligations under the Plan."

Appellants argue that the service contract is ambiguous because it offers two reasonable interpretations regarding the contract's termination date. To support their claim, appellants refer to the section of the contract that states that "coverage under [the service contract] is effective beginning on the date you purchased our product ... and will expire either one ..., two ..., three ..., four ..., or five years from this effective date depending on the length of the Plan you purchased." Appellants argue that because they purchased a four-year service contract, a reasonable interpretation of the contract is that the contract terminates on December 20, 2012, four years after they purchased the contract. Thus, appellants argue that the district court erred by dismissing the matter, and the case should be remanded for a jury to resolve the ambiguity in the contract.

Appellants' argument is without merit because it overlooks and ignores the other sections of the service contract. The paragraph following the language cited by appellants provides that respondents' obligations under the contact are "fulfilled in their entirety" if the product is replaced. The contract also states that replacement of the product satisfies "all obligations" under the plan.[1] Because contract language is read in the context of the instrument as a whole, appellants' reliance on only one section of the contract is unreasonable. *See Brookfield Trade Ctr.*, 584 N.W.2d at 394.

This case is very similar to an unpublished case from the Eastern District of Kentucky. In that case, the plaintiff purchased a service contract from Best Buy and received a copy of the agreement when he purchased a television set. *Crail v. Best Buy Co.*, 2007 WL 2726102, at *1 (E.D.Ky.2007), *aff'd*, 285 Fed.Appx. 277 (6th Cir.2008). The agreement contained a provision stating that "[t]his Plan is fulfilled when the product is replaced after the expiration of the manufacturer's warranty." *Id.* The television set malfunctioned following the expiration of the manufacturer's warranty, and the plaintiff obtained a replacement television pursuant to the service contract, which the plaintiff had purchased from Best Buy. *Id.* Thereafter, the plaintiff filed a class-action complaint alleging that Best Buy's "premature" termination of the warranty coverage in conjunction with the "replacement in lieu of repair" feature of the Plan was unlawful. *Id.*

In considering the plaintiff's claims, the court found it necessary to dismiss because it was "undisputed that plaintiff received the benefit of the bargain.... Nowhere in the Plan are there contrary terms that imply that any further coverage applied once such replacement occurred." *Id.* at *4 (footnote omitted). The court also noted that the plaintiff did not plead "that the replacement television was of inferior quality or otherwise not a suitable replacement for the television he originally purchased." *Id.* at *4 n. 1. Therefore, the court determined that the plaintiff had failed to state a claim for breach of contract. *Id.* at *4.

The decision in *Crail* is persuasive. As in *Crail*, appellants purchased a television set and a service contract from Best Buy. The set subsequently malfunctioned after the expiration of the manufacturer's war-

---

1. Appellants argue that repair or replacement in the limits section is described in reference to "any single claim" and that this suggests a right for other, later claims. But these words are followed, in the same paragraph, by that statement that "all obligations under the Plan" are satisfied in the event of replacement. There is also merit in the district court's observation that the Plan "was directly tied to [appellants'] originally purchased television."

ranty, and Best Buy replaced it pursuant to the terms of the contract. Although the service contract was purchased for a four-year term, the plain language of the contract contains specific language limiting the length of the contract if certain events occur. This unambiguous language provided that the service contract is fulfilled if the television is replaced. The district court correctly concluded that appellants received the benefit of the bargain with Best Buy.

Appellants offer several additional arguments on the contract issue, none of which has merit. Essentially, appellants argue that the "Limits of Liability" provision must be read with attention to the repair-and-replacement language of the contract. Appellants claim that the contract is ambiguous because it was reasonable for them to understand that Best Buy would first attempt to repair the television, should it break. But this argument is inconsistent with the plain language of the contract—that respondents have sole discretion in determining whether the television should be repaired or replaced and that their obligations under the service contract are satisfied if the television is replaced.

Appellants contend that this interpretation of the contract gives respondents "sole discretion" to terminate the agreement, which is "not what [they] bargained for." But in fact, this is the exact content of the bargain. The service contract begins by stating that it is a legal contract and that "[b]y purchasing it, you understand that it is a legal contract and acknowledge that you have had the opportunity to read the terms and conditions set forth herein." Thus, appellants agreed to the terms of the contract by purchasing it.

Appellants further argue that they reasonably interpreted the service contract to be a contract for insurance under Minn.

Stat. § 60A.02, subd. 3 (2010), rather than a service contract under Minn.Stat. § 59B.02, subd. 11 (2010). But the contract repeatedly refers to itself as a service contract and specifically provides that "[t]his Plan is not a contract for insurance." Moreover, the language of the plan is consistent with a service contract, rather than a contract for insurance. Therefore, we conclude that the district court did not err by dismissing appellants' breach-of-contract claim under rule 12.02(e).

## 2.

▮▮▮▮ Appellants challenge the district court's dismissal of their claims under the MCFA and the MFSAA. Consumer-protection statutes are remedial in nature and are liberally construed in favor of protecting consumers. *State by Humphrey v. Alpine Air Prods., Inc.,* 490 N.W.2d 888, 892 (Minn.App.1992), *aff'd,* 500 N.W.2d 788 (Minn.1993). But when a party pleads a fraud claim, "the circumstances constituting fraud . . . shall be stated with particularity." Minn. R. Civ. P. 9.02. A fraud claim is pleaded with particularity when "the ultimate facts are alleged." *Purdy v. Nordquist (In re Estate of Williams),* 254 Minn. 272, 283, 95 N.W.2d 91, 100 (1959).

### MCFA

The MCFA provides for enjoining the use of any "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice" made with the intent that others rely on the practice in connection with the sale of merchandise. Minn.Stat. § 325F.69, subd. 1 (2010). To prevail under the MCFA, appellants must show that respondents intentionally made a misrepresentation regarding the sale of the service contract and that they suffered damages caused by the misrepresentation. *Group Health Plan,*

*Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 12 (Minn.2001).

 Appellants argue that the district court erred by dismissing their consumer-fraud claims because even though the statements in the service contract were "technically true," the service contract was written in "a manner that is misleading." But this consumer-fraud argument is a repetition of appellants' breach-of-contract claim, so it fails for the same reasons. Moreover, the complaint alleges that respondents "have misrepresented that their Service contract expires at the end of a specified term when, under certain circumstances, it expires prior to the specified term." Because the complaint is devoid of any allegation that respondents intended to deceive anyone, the claim is not stated with the requisite particularity. *See Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn.2000) (stating that alleged fraudulent conduct under the MCFA must have been intended to deceive someone). And in order to obtain monetary remedies under the MCFA, a private party must show the requisite type of action and injury and that the action will benefit the public. Minn. Stat. § 8.31, subd. 3a (2010); *Ly*, 615 N.W.2d at 314 (holding that Minn.Stat. § 8.31 "applies only to those claimants who demonstrate that their cause of action benefits the public"). Here, appellants' complaint is devoid of any allegations that the complaint was brought for the "public benefit" or how their action benefits the public. The district court did not err by dismissing appellants' claims under the MCFA.

*MFSAA*

The MFSAA prohibits a corporation from advertising to the public "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Minn.Stat. § 325F.67 (2010).

For the corporation's activities to fall within the MFSAA, it must intend to sell merchandise or induce the public to enter into an obligation. *Id.*

Here, appellants' complaint alleged that respondents, "with the intent to increase sales, placed before the public Service contract advertisements that were deceptive and or misleading." The district court concluded that appellants had not stated their claims under the MFSAA with the requisite particularity because "no specific false statement, oral or written, has been alleged; rather [appellants] only assert that misrepresentations occurred through public advertising."

 Appellants assert that because rule 12.02(e) requires the district court to consider as true the facts alleged in the complaint, they are entitled to plead without reference to a specific advertisement. To the contrary, the claim is in the nature of fraud, which must be pleaded with particularity. *See* Minn. R. Civ. P. 9.02 (stating that when a party pleads a fraud claim, "the circumstances constituting fraud ... shall be stated with particularity"). Although there is limited caselaw in this state addressing the requirement that claims under the MFSAA must be pleaded with particularity, Minnesota courts have looked to federal courts' interpretations of the federal pleading rules for further guidance because Minn. R. Civ. P. 9.02 is virtually identical to rule 9(b) of the Federal Rules of Civil Procedure. *See DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (stating that the federal rules are instructive on interpreting the Minnesota rules, especially when "the relevant language of the state and federal rules is identical"). The federal courts have addressed the particularity requirement under Fed.R.Civ.P. 9(b), as applied to claims alleging false statements in advertising. The Fourth Circuit Court of Appeals has stated that

"the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999). And the Eighth Circuit Court of Appeals has stated that "particularity" under Fed.R.Civ.P. 9(b) has been construed to mean the "who, what, when, where, and how: the first paragraph of any newspaper story." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549–50 (8th Cir.1997).

Here, the record does not contain any specific advertisements produced by respondents, and appellants failed to identify any specific advertisement produced by respondents that is misleading. Without an allegation that a specific advertisement is misleading, the complaint does not satisfy the particularity requirement that claims identify the "who, what, when, where, and how." *See id.* at 549–50. Because the complaint does not meet the particularity standard, the district court properly dismissed appellants' MFSAA claim.

### DECISION

The service plan purchased by appellants unambiguously provided that it expired upon respondents' replacement of the product. Moreover, because appellants failed to properly plead their consumer-fraud claims with the requisite particularity, the district court properly dismissed them.

**Affirmed.**